M. O. JAMES et al. v. E. S. WITHERS et al.

(Decided May 29, 1900.)

*Claims Against Dead Man's Estate—Taxes—Post Mortem Analysis Ordered by the County—Sale of Land by Trustee, Pendente Lite—Purchaser—Heirs-at-Law.*

1. Taxes assessed against a decedent in nis lifetime is a valid debt against administrator.

2. A claim by the county to be reimbursed for a *post mortem* analysis of decedent's stomach, made under contract with a portion of the heirs, is no valid charge against tne estate, real or personal.

3. A sale of land made by a trustee in deed of trust after the debt secured has been arranged between trustor and the heirs of decedent, and tne note of the trustor surrendered to him by the heirs, and they restored to possession, especially when the sale has been made *pendente lite* in an action to enjoin such sale, is not valid and conveys no title.

4. Such purchaser cannot look to the estate for reimbursement of the purchase money, and he is liable for rents and *mesne* profits, and the trustee is entitled to no commissions.

5. The plaintiffs, heirs-at-law of decedent C. W. James, have the right to pay off the indebtedness of the estate, and to have the deed of trust cancelled, and thereby become the sole owner in fee of the land—the proper costs and charge of administration being also paid, by a day named, and thus obviate the sale by the administrator.

CIVIL ACTION to enjoin the sale of land by the trustee named in a deed of trust, on the ground that there was no necessity for the sale, as the debt secured had been adjusted, heard before *Shaw, J.,* at Fall Term, 1899, of the Superior Court of STOKES County.

From the decree directing a sale by the trustee, E. S. Withers, defendant, the plaintiffs appealed.

· The case is one of some complexity, but is fully elucidated in the opinions rendered now and at February Term, 1894, reported in 114 N. C., 474.

MONTGOMERY, J., writes the opinion.
CLARK, J., writes dissenting opinion.
*Messrs. W. W. King,* and *Glenn & Manly,* for appellants.
Appellee not represented in this Court.

MONTGOMERY, J. C. W. James, the plaintiff's ancestor, on the 20th of July, 1892, conveyed a tract of land and certain personal property to James L. Grogan at the price of $2,350, and the purchaser and his wi feexecuted a deed of trust upon the property to secure the notes which were given by Grogan for the purchase money. After the death of the grantor, Grogan conveyed his equity of redemption, his wife joining in the deed, in the tract of land to the heirs-at-law—without naming them—of the grantor, James. W. F. Campbell, the public administrator of Stokes County, qualified as administrator of C. W. James, and requested E. S. Withers, the trustee, (defendant) to sell the land and pay the proceeds to him, to be constituted assets for the payment of the debts of the intestate. The sale of the land was advertised by the trustee, and then this action was commenced to enjoin the trustee from making a sale of the land, to have the deed of trust cancelled, and for such other and further relief as they might be entitled to. The injunction was granted and an appeal taken by defendant from the order. This Court on hearing the appeal reversed the order of the court below on the ground that it was improvidently made, because no undertaking was required on the part of the plaintiffs. The plaintiffs were allowed to apply again for an injunction, to be granted upon the filing of an undertaking on their part.

JAMES *v.* WITHERS.

During the pendency of the appeal, however, the trustee had sold the land, the defendant J. Walter Neal having been the purchaser.

In the opinion of the Court on the first appeal it was suggested that when all proper parties should have been made and the pleadings filed, if it should appear necessary, then there should be a reference to ascertain whether there was any debts of the intestate, and the amount, if any, and the sum which might become due for charges of administration. When all this should have been done, if it should appear to be to the interest of all the parties concerned, a decree would be proper, giving to the plaintiff a day before which they would be allowed to pay the ascertained debts and charges of administration, and upon payment of the same, a decree might be made for the cancellation of the deed of trust, and for partition of property among the owners. It was further suggested that if there should be no debts of the estate, the plaintiffs being entitled to the proceeds of the sale as distributees, and being also the owners of the equity of redemption, there should be a judgment directing a cancellation of the deed of trust upon the payment of the charges of administration. In deference to these suggestions all the heirs-at-law of C. W. James were made parties-plaintiff, and the administrator and J. W. Neal, and the Board of Commissioners of Stokes County were made parties-defendant. At August Term, 1897, of the Superior Court, the sale by the trustee to Neal was set aside, and a reference ordered. The referee was instructed to find the facts, and his conclusions of law thereon, and report the same to the Superior Court.

The defendants appealed from that part of the judgment which decreed that the sale from the trustee to Neal should be set aside.

At September Term, 1897, of this Court the judgment of the Court below was affirmed.

The referee made a report of the proceedings had before him as referee, to the Superior Court, and exceptions were filed on both sides. He reported that the amount paid by Neal as the price of the land, was $360; that the trustee retained $53 thereof for his charges and commissions in making the sale, and paid over to the administrator the balance, $307; that the administrator disbursed all but $9.55 of the amount, except the sum of $60, which he paid into the Clerk's office for the plaintiffs—the heirs of Calvin and Alexander James—and the sum of $17.35 which he retained as commissions; that the disbursements made by the administrator were the sum of $12.30 for taxes assessed against C. W. James before his death; $30 attorney's fee; $168 to defendant Board of Commissioners, and the balance incidental cost of administration; and that most of the fund deposited in the Clerk's office had been drawn out by the heirs-at-law of Calvin and Alexander James.

It appeared further from the referee's report that the amount of $168, which was paid by the administrator to the Board of Commissioners, was a part of a claim which said Board demanded by virtue of a contract and agreement made on the 5th of September, 1892, by certain of the plaintiffs, M. O. James, R. A. Neal, William James, Pleasant James and Faucett Odell. The contract was made because of a belief, on the part of the plaintiffs named, that the death of C. W. James was caused by poison having been feloniously administered to him, and a desire on their part to have the stomach of the deceased examined by a chemist, the plaintiffs being unable to furnish the money for that purpose. The agreement was in these words: "We, the undersigned heirs-at-law of C. W. James, deceased, do hereby agree and consent that all expenses incurred by the county of Stokes in having the stomach of the said C. W. James analyzed, including the

charge made by the chemist who analyzes the same, may be paid by the personal representative and administrator of said James, deceased, out of our distributive share of his estate, and that a receipt of said administrator for said expenses may be and shall be a valid voucher for him in the administration of said estate."

Upon his findings of fact, the referee concluded as matter of law:

1. That the defendants were bound by the judgment rendered at Spring Term, 1897, setting aside the sale, that judgment having been affirmed by the Supreme Court.

2. That the tax assessed in 1892 against C. W. James was a valid claim upon the estate of C. W. James.

3. That the $60, which was paid into the Clerk's office by the administrator for the heirs-at-law of Calvin and Alexander James should be refunded to the purchaser of the land, Neal, and unless refunded by the parties who received the same, Neal should be subrogated to their rights.

4. That the Board of Commissioners should return to the purchaser, Neal, the $168, paid to them by the administrator, the referee holding that the contract made by a part of the plaintiffs with the Board of Commissioners did not constitute a debt against the estate of C. W. James.

The referee further concluded as a matter of law that in case the costs of administration, the debt (taxes) $12.30, and the $60, paid into the Clerk's office, should not be paid within a reasonable time, the administrator should have the right to enforce the sale of the land by the trustee—the net proceeds to be used by the administrator toward the payment of the costs of administration, including his commissions; the debt of $12.30, and the balance to be paid to the heirs-at-law (the plaintiffs) according to their respective rights; and in making this distribution of the surplus the administrator

should pay to J. Walter Neal from the interest of the heirs-at-law of Calvin and Alexander James the $60, which was paid into the Clerk's office for them. The exceptions filed to the report were heard at Spring Term, 1899, of the Superior Court, and the referee's conclusions of law were modified. It was adjudged by the Court that the defendant Neal should be reimbursed to the extent of the whole of the purchase money with interest from the day of sale; that the County Commissioners should be paid the amount expended by them, to-wit, $323.55, under the contract with certain of the plaintiffs; that the heirs-at-law, plaintiffs, pay to defendant Neal $232; that the trustee, Withers, pay to Neal the sum of $53; that the administrator, Campbell, pay to Neal $15 (overcharge in commission); that the Clerk of the Court pay to Neal $60, originally paid into his office by the administrator, less the amounts paid out by him to the heirs-at-law of Calvin and Alexander James; that the heirs of Calvin and Alexander James pay to Neal the amount drawn out of the Clerk's office by them respectively; that the plaintiffs who signed the agreement with the County Commissioners pay to the County Commissioners the amounts expended under said contract, less $168, which had been paid to them by the administrator.

It was further ordered that the Clerk of the Court ascertain and report to the court at its next term the amount of rental value paid for the land since the day of sale, June 30, 1894, and by whom received, the amount of taxes paid since June 30, 1894, and by whom paid, and the amount received from the Clerk of the Court by the plaintiffs or any of them with their names, and the value of any timber sold from the land, and by whom, and what improvements, if any, have been put upon the land.

Exceptions were made by the plaintiffs to the order and

judgment of the Court, and noted, and appeal entered. At the next term.of the Superior Court the report was made by the Clerk, and confirmed, no exceptions having been made thereto.

It appeared from the report of the Clerk that J. Walter Neal was chargeable with $169.17 received from rents, and it was ordered by the Court that that amount be credited and deducted from the amount due Neal in the order made at the, last term of the court. It was further ordered that the plaintiffs pay the amounts as directed in the order made at the last term, Spring Term, 1899, to the defendant Neal, and to the County Commissioners of Stokes County, and the $10 allowed at the present term to the Clerk of the Court, on or before the first day of December, 1899, and upon their failure to do so, it was ordered that Withers, trustee, should sell the land described in the deed, and report to the next term of court.

It was further ordered that J. C. Flinn pay over to defendant Neal the $15 in his hands for cross-ties, and that Neal be chargeable with the same. The plaintiffs then perfected their appeal under their exceptions filed at Spring Term, 1899, of the Superior Court.

The report of E. B. Jones, referee, in this case sets out the facts very clearly, and the referee held, properly as we think, that the only debt which was proved against the estate of the decedent, James, was the one for the taxes assessed against the decedent during his lifetime. He properly held that the contract between certain of the plaintiffs and the County Commissioners was not a debt against the decedent. As we shall hereafter see, the referee made an error in his conclusion of law that Neal should be reimbursed to the extent of the amount which he paid to the trustee for the purchase of the land.

46——126

We think there was error in the order and judgment made at Spring Term, 1899, of the Superior Court. Whether or not there was error in the judgment entered in the cause at Spring Term, 1897, of the Superior Court, is not the subject of review. The sale of the land by the trustee to Neal was set aside peremptorily, and for reasons set out in the judgment. That judgment was affirmed by this Court at September Term, 1897 (121 N. C., 692). There has been no application to rehear the case on the part of the defendants. For reasons satisfactory to ourselves, we do not think it incumbent on us to open the past record of this case. The defendant Neal then bought nothing at the trustee's sale. Such a case is not usual, but sometimes such investments are made. He has lost the money which he paid to the trustee, and we can not affirm any judgment of the court below which orders that money to be paid back to him by any person into whose hands it may have come.

There was also error in the judgment of the Superior Court at Spring Term, 1899, in which it was ordered that the plaintiffs should pay to the defendant Board of Commissioners any part of the amount which the Board claimed by virtue of their contract with certain named ones of the plaintiffs. As the matter stood after the execution of the deed by Grogan and wife, which conveyed the equity of redemption in the land to the heirs-at-law of C. W. James (the heirs at-law being the plaintiffs in this action), the plaintiffs had the right to pay off the indebtedness of the estate, and have the deed of trust cancelled, and thereby become the sole owners in fee of the land.

The contract by certain ones of the plaintiffs with the defendant Board of Commissioners constituted no lien upon the land, and was no equitable assignment of the interest of these plaintiffs in it to the Commissioners. It was a simple

contract, and while good faith has not been kept by those of the plaintiffs who executed that contract with the Commissioners, yet we can not subject the land by a judicial order under that contract to the payment of that obligation.

Entertaining the opinion that we do of this case, judgment should be entered below in favor of the plaintiffs against the defendant Neal for the amount which he has received, as set forth in the report made by the Clerk, and that the plaintiffs be allowed a reasonable time in which to pay the debt of $12.30 for taxes, and the proper costs and charges of administration, and that, upon their failure to do so, a sale of the land may be ordered by the court in order that the same may be paid—the surplus to be paid to the plaintiffs. If the plaintiffs should pay within the day named by the court the debt of $12.30 taxes, and the proper costs and charges of administration, then the deed of trust should be ordered cancelled of record, and the plaintiffs, if they so desire, have the land divided or sold for partition. The case is remanded for judgment according to this opinion.

Reversed.

CLARK, J., dissenting.  On September 5, 1892, the plaintiffs, M. C. James, R. A. Neal, William James, Pleasant James and Faucett Odell, made a written contract with the County Commissioners that if they would cause the stomach of C. W. James to be examined, all the expenses thereof should "be paid by the personal representatives and administrator of said James out of our distributive share of his estate, and that the receipt of said administrator for said expenses shall be a valid voucher for him in the administration of said estate." At that time the only property belonging to the estate of the deceased was a bond for $2,250, secured by a trust deed on realty. The parties above named

JAMES *v.* WITHERS.

were then the distributees of C. W. James, and the aforesaid contract was upon good consideration, and amounted to an equitable assignment *pro tanto* of their interest in the estate. It was not a mere order upon the administrator, but a binding contract that the receipt for the amount so paid should be a valid voucher in the settlement of the estate.

Subsequently, the said plaintiffs arranged with the obligor of the bond and mortgagor to surrender the bond, and take over the realty in its stead. By this arrangement, the only asset of the estate was now realty, and the plaintiffs became heirs-at-law instead of distributees; but this act of theirs can not in equity have the effect of destroying the rights of third parties. The Commissioners have no lien on the realty, but they were *pro tanto* assignees of the personal estate; they did not assent to its being changed into realty, and, to the extent of their claim the fund remains stamped with the nature of personalty. The realty should be reconverted into personalty by a sale of enough of the plaintiffs' shares to pay the expenses, which on the faith of the agreement of the plaintiffs the Commissioners expended at the instance and request of the plaintiffs. The county should not be "jockeyed" by the plaintiffs out of that money thus expended.